OPINION
{¶ 1} Defendant-appellant, Daniel R. Gleason, was indicted on four counts, including two counts of attempted murder and two counts of felonious assault. After a jury trial, appellant was found guilty on all counts. The trial court merged Counts 2 and 4 for sentencing purposes and imposed seven years as to Count 1, attempted murder, and three years as to Count 3, attempted murder, and ordered them to run consecutively. Appellant filed a notice of appeal and raises the following assignments of error:
I. The trial court's failure to give any curative or cautionary instructions, or to grant a mistrial, when a prosecution witness repeatedly made inflammatory references to information beyond his knowledge and not otherwise presented by competent testimony violated defendant-appellant's right to a fair trial as guaranteed under the Fifth
and Fourteenth Amendments to the United States Constitution and ArticleI, Section 10 of the Ohio Constitution.
II. The trial court erred when it entered a judgment of conviction against the appellant when the evidence was insufficient to sustain the conviction and was not supported by the manifest weight of the evidence.
III. The trial court erred when it imposed consecutive sentences without consideration of the statutory factors.
IV. The trial court erred when it did not notify the defendant of his requirements under post-release control.
 {¶ 2} Appellant's indictment arose out of an incident occurring at Tee Jaye's restaurant in the early morning hours of March 29, 2002. The first witness to testify at the trial was Shannon Blankenship. Blankenship testified that, earlier on the evening of March 28, 2002, he went to the Sportsmen's Bar to shoot pool, arriving at approximately 8:30 p.m. He had approximately six or seven drinks and shared a marijuana joint with three or four other individuals before leaving the Sportsmen's Bar between 1:30 and 2:00 a.m. on March 29. He went to Tee Jaye's restaurant with his girlfriend, Danielle Speece, and two other friends, Allen Hood and Angela Mullins. After ordering breakfast, Blankenship noticed that an individual, later identified as Jeff Walker, was "looking and just making faces and just it seemed like to me just trying to get on my nerves, you know, just picking a fight." (Tr. Vol. I, at 62.) Blankenship also said that Walker blew him a kiss and was flexing his arm at him, and he felt like Walker "was just treating me like I was no one, and no one likes to be treated like that." (Tr. Vol. I, at 62.)
 {¶ 3} Blankenship walked over to Walker's table, who was seated with appellant and another man and woman. Blankenship told Walker he was not going to let Walker "disrespect" him and they could fight or eat breakfast. (Tr. Vol. I, at 62.) They shook hands and Blankenship started to walk away when Hood, who had followed Blankenship to Walker's table, and appellant started arguing. Another patron, Peggy Jordan, stepped between Hood and appellant, and appellant pushed Peggy down. At that point, both Jimmy Jordan, Peggy's husband, and Blankenship approached appellant. Blankenship believed that appellant hit Mr. Jordan but later learned that appellant had stabbed him with a knife. Blankenship attempted to help Mr. Jordan and punched appellant. Appellant swung upwards with the knife and cut Blankenship in the temple. At the time, Blankenship believed he had been hit but not cut. Blankenship attempted to hit appellant again but missed because, in mid-swing, he was hit in the back of the head with a chair. Blankenship was taken to the Ohio State University Hospital where he was treated and remained until the afternoon of March 31, 2002. Blankenship is still suffering residual effects from the attack, including loss of hearing in one ear.
 {¶ 4} Blankenship's girlfriend, Danielle Speece, also testified at the trial. Earlier that evening, she had been at Angela Mullins' house then they met Shannon, Allen and Rocky Hood at the Sportmen's Bar at approximately 2:15 a.m., before going to Tee Jaye's restaurant. While they were eating breakfast, Blankenship started getting upset because a man was staring, flexed his arm and blew a kiss at him. Danielle went to the restroom and, upon her return, she saw Blankenship approach the other man's table and, after exchanging some words, the two men shook hands. Danielle testified that Peggy Jordan then stepped between Hood and appellant, and appellant pushed her down. Her husband then approached appellant and Danielle believed that appellant knocked Mr. Jordan unconscious because Mr. Jordan fell face first on the ground. Blankenship attempted to hit appellant and missed, and Danielle saw appellant swing at Blankenship. Blankenship immediately grabbed his head and turned to the side. A third man at appellant's table picked up a chair and broke it over Blankenship's head. At first, Danielle had difficulty identifying appellant as the assailant because his hair was longer at trial but, later, she was positive it was appellant who stabbed Mr. Jordan and Blankenship.
 {¶ 5} Jimmy Jordan also testified about the events at Tee Jaye's restaurant. Jordan was there with his wife, Peggy, and two friends; however, he has no memory of the events after he started eating his food. He sustained a stab wound to his chest which required surgery. Peggy Jordan testified that she was on her way to the restroom at Tee Jaye's and she was talking to the waitresses when a man stood up behind her and was yelling. Peggy turned and told the man to calm down and he hit her in the face. The waitresses helped her up and her friends pulled her aside. She saw a glare or glimmer in appellant's hand enter her husband's chest and then her husband was face down on the floor and not moving. She stated that she saw appellant stab her husband.
 {¶ 6} Lenore Ellison, one of the waitresses working that morning, stated that, while taking Blankenship's order, he told her that Walker was "eyeballing" him. (Tr. Vol. I, at 234.) She saw Walker leaning out of his booth and staring at them. The people at both tables stood up and she told them to "take it outside" and Blankenship and Walker shook hands. (Tr. Vol. I, at 239.) Then Peggy stepped in and appellant pushed her down. Jimmy Jordan was defending his wife and Ellison saw appellant stab Jimmy Jordan in the chest. Ellison saw the blade as it entered Jordan's body. Jordan turned, fell and hit a wall. Ellison also saw appellant hit Blankenship with the knife in the head. Appellant and his friends fled.
 {¶ 7} Appellant also testified at the trial. He stated that he carried a knife because he worked for a demolition company and it was a habit to carry it at all times. His friend, Walker, was motioning to friends at the table behind Blankenship. When Blankenship approached the table, Blankenship and Walker exchanged words. Appellant got out of his seat and Hood approached him and they exchanged words. He stated that Peggy Jordan then started pushing him and screaming at him. He saw Jimmy Jordan get out of his seat and appellant stated that he was not "going to let them jump [him]." (Tr. Vol. II, at 312.) Appellant pushed Peggy out of the way and then Jimmy Jordan and Hood started hitting appellant, a total of three times. Appellant admitted to stabbing Jimmy Jordan in the chest. Blankenship then hit him once and attempted again but missed the second time. Appellant stated that, when Blankenship hit him, appellant stumbled backwards and may have hit Blankenship with the knife as he did so, but he did not consciously try to stab Blankenship.
 {¶ 8} Appellant admitted that the next night he was at the Keg Room bar and an altercation erupted. Even though he was not involved, he was questioned by the police and the officer confiscated his knife. Appellant admitted in his testimony at trial that it was the same knife he had used the day before. Appellant also admitted that he could have left Tee Jaye's without stabbing Jimmy Jordan but he believed Jordan and Hood were going to "jump" him, he was scared and he stabbed in an attempt to get Jordan away from him.
 {¶ 9} By the first assignment of error, appellant contends that the trial court's failure to give any curative or cautionary instructions, or to grant a mistrial, when a prosecution witness repeatedly made inflammatory references to information beyond his knowledge and not otherwise presented by competent testimony, violated appellant's right to a fair trial as guaranteed under the Fifth andFourteenth Amendments to the United States Constitution and Section 10, Article I, of the Ohio Constitution. Specifically, appellant contends that references made by Blankenship and Jimmy Jordan concerning Jordan being stabbed in the heart and a comment by the prosecutor in closing argument are prejudicial.
 {¶ 10} The trial court granted a motion in limine regarding references to an injury to the heart. The first reference that appellant contends was prejudicial was made by Blankenship, as follows:
Q. Go ahead. Describe what happened after you shook hands with Mr. Walker.
A. I tried to walk away. And out of the corner of my eye I seen Mrs. Jordan sitting there telling the guy to sit down and have breakfast, and as I took the final step Mr. Gleason grabbed her and shoved her down, and then her husband ran over and said "Hey, that's my wife". Then he was —
MR. DYE: Your Honor, again, objection.
THE COURT: Overruled.
THE WITNESS: Then after that, that is all Mr. Jordan said, and I thought Mr. Gleason had punched him. In all reality he was stabbed in the heart.
MR. DYE: I object, Your Honor.
THE COURT: You can indicate the area where you believe he was stabbed, but I don't think you could see his heart, could you?
THE WITNESS: No.
THE COURT: Then indicate on the body the area where you believed he was stabbed.
THE WITNESS: In the chest.
THE COURT: Fine. Next question.
MR. DYE: Your Honor, again, I would object.
(Tr. Vol. I, at 64-65.)
 {¶ 11} A conference was then held outside of the hearing of the jury and the defense attorney objected on the basis that the witness did not have personal knowledge of the stabbing. The trial court determined that the prosecutor could lay a foundation and, if it was insufficient, the court would grant a motion to strike. A motion to strike was not requested.
 {¶ 12} Appellant also contends that comments made by Jimmy Jordan were also prejudicial, as follows:
Q. Was there anything different about your body than on March 28 or when you were having breakfast on March 29?
A. Yes.
Q. What was the difference?
A. I was stabbed in the heart.
(Tr. Vol. I, at 174.)
 {¶ 13} Defense counsel again objected and a bench conference was held. The trial court sustained the objection since no medical records were being introduced or doctors testifying. The trial court also sustained a motion to strike and instructed the jury. Then the following occurred:
Q. What kind of surgery was performed?
A. Heart surgery.
(Tr. Vol. I, at 177.)
 {¶ 14} The trial court sustained an objection and motion to strike the heart portion of the answer. The last answer from Jordan which appellant contends was prejudicial was as follows:
Q. Are you able to work now?
A. No.
Q. Why is that?
A. Because I can't deal with the heat that the job that I did have, and I am not supposed to within 10 to 20 pounds of lifting, and the heart surgeon, there was four of those said that.
(Tr. Vol. I, at 180.)
 {¶ 15} Again defense counsel objected and the trial court sustained the objection.
 {¶ 16} Finally, appellant contends that the following comment made during closing argument was prejudicial:
* * * But when you take a knife and you plunge it into the chest, upper left chest, I suggest that you're trying to kill that person because we all know in the common course of our daily lives that a stabbing to the heart will cause death.
(Tr. Vol. II, at 390.)
 {¶ 17} Defense counsel objected and, after a discussion outside the hearing of the jury, the trial court overruled the objection.
 {¶ 18} Appellant argues that the cumulative effect of these errors violates appellant's right to a fair trial. In State v. Garner (1995),74 Ohio St.3d 49, 64, the Supreme Court of Ohio stated that, pursuant to the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." In Garner, the court found the doctrine inapplicable because the trial did not contain multiple instances of harmless error.
 {¶ 19} In this instance, the challenged statements were not error. The trial court either had the answers clarified or granted a motion to strike and instructed the jury accordingly. The jury is presumed to follow instructions given by the court. Pang v. Minch (1990),53 Ohio St.3d 186, paragraph four of the syllabus.
 {¶ 20} The statement made by the prosecutor during closing argument was not error. Appellant was charged with attempted murder and the prosecutor's argument was if one puts a knife into another's upper left chest, it is a reasonable inference that one intends to kill that person. The evidence in this case included eyewitness testimony that appellant stabbed both Blankenship and Jordan. Appellant also admitted that he put the knife approximately one inch into Jordan and intended to get Jordan away from him. Appellant's constitutional rights were not violated and appellant's first assignment of error is not well-taken.
 {¶ 21} By the second assignment of error, appellant contends that the trial court erred when it entered a judgment of conviction when the evidence was insufficient to sustain the conviction and was not supported by the manifest weight of the evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 22} The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (1993), Franklin App. No. 93AP-387.
* * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594). Thompkins, at 387.
 {¶ 23} The evidence in this case is neither insufficient nor against the manifest weight of the evidence. Eyewitness testimony included Blankenship, Speece, Peggy Jordan and Ellison, and they all identified appellant as the one who stabbed Blankenship and Jimmy Jordan. Also, appellant admitted that he intended to stab Jordan and he could have left Tee Jaye's without doing so. In this case, the evidence is such that, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt and there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. Appellant's second assignment of error is not well-taken.
 {¶ 24} By the third assignment of error, appellant contends that the trial court erred when it imposed consecutive sentences without consideration of the statutory factors. A trial court has broad discretion when sentencing within the statutory limits provided. State v. Haines (1998), Franklin App. No. 98AP-195. A reviewing court may not disturb a sentence imposed by a trial court unless it finds by clear and convincing evidence that the sentence is not supported by the record or is not in accordance with law. Id.
 {¶ 25} Pursuant to R.C. 2929.14(E), a trial court may impose consecutive sentences for conviction of multiple offenses if the court finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 26} When a trial court imposes consecutive sentences pursuant to R.C. 2929.14, it must also comply with R.C. 2929.29(B)(2)(c) which requires that the sentencing court give its reasons for selecting the sentences. Recently, in the syllabus of State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Supreme Court of Ohio determined that:
1. Pursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing.
 {¶ 27} At the sentencing hearing the trial court stated, as follows:
Mr. Gleason, I feel compelled to say a couple things about what went on. I sat through this trial. I have absolutely no doubt that had Mr. Blankenship stayed over on his side of the restaurant, minded his own business, none of this would have happened.
It is unfortunate that he came over and confronted people at your table. It is unfortunate that it turned into a free-for-all thereafter. All of that is unfortunate for you.
You, however, were hauling a knife around with you. You had no reason to do it, because you weren't working. You said you used it in your work. You hadn't been working for some period of time.
I am firmly convinced with the amount of time you have spent in prison, you found it necessary in prison to defend yourself in certain fashions, and I can understand that.
Your problem is you brought that mentality back out onto the street with you. If you didn't have the knife with you, this would have been a fist fight, and that is what it would have been. You might have gotten whacked around a bit and the whole thing would have ended.
There were dozens of people of good will in that restaurant. This was not going to turn into a situation where you ended up dead. However, you chose from the very beginning of this fight to introduce a knife into the fist fight.
I gave you a minimum sentence on the guy that really started this whole problem. I gave you seven years on this gentlemen that really, other than, as far as I can tell, being drunk and trying to be a peacemaker, he didn't have anything else to do with this. You almost killed him. But for the grace of God we could have been here on an aggravated murder charge. That is the Court's reasoning on the sentencing.
(Jan. 21, 2003, Tr. at 6-8.)
 {¶ 28} The trial court did not make the required statutory findings and the case must be remanded for resentencing.
 {¶ 29} Appellant also argues that the trial court erred in imposing the maximum sentence without considering the statutory factors. Appellant contends that, since the trial court imposed a seven year sentence for the attempted murder of Jordan and a consecutive three year sentence for the attempted murder on Blankenship, the total sentence equals the maximum sentence that could have been imposed on the highest level offense and the trial court did not make any statutory findings as to why it imposed a maximum sentence.
 {¶ 30} Given our determination that the case must be remanded for resentencing, appellant's contention is moot; however, this court has repeatedly held that a trial court may impose consecutive sentences in the aggregate even if the consecutive sentences exceed the maximum prison term allowed by R.C. 2929.14(A) for the most serious offense for which a defendant was convicted. See Haines, supra; State v. Scott, Franklin App. No. 01AP-801, 2002-Ohio-2251; State v. Norvett, Franklin App. No. 01AP-572, 2001-Ohio-8878; State v. Harper (Dec. 21, 2000), Franklin App. No. 00AP-23; State v. Drake (Dec. 28, 1999), Franklin App. No. 99AP-394. Appellant's third assignment of error is well-taken in part.
 {¶ 31} By the fourth assignment of error, appellant contends that the trial court erred when it did not notify him of his requirements under post-release control. In Woods v. Telb (2000), 89 Ohio St.3d 504, paragraph two of the syllabus, the Supreme Court stated, as follows:
Pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence.
 {¶ 32} In this case, the trial court did not notify appellant that post-release control was a mandatory part of his sentence at the sentencing hearing. Pursuant to Woods, the trial court must do so. Appellant's fourth assignment of error is well-taken.
 {¶ 33} For the foregoing reasons, appellant's first and second assignments of error are overruled, the third assignment of error is sustained in part and the fourth assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for resentencing.
Judgment affirmed in part, reversed in part and remanded for resentencing.
BRYANT and KLATT, JJ., concur.