OPINION
{¶ 1} Defendant-appellant, Vincent D. Williams, appeals from a jury conviction on one count of attempted burglary and one count of possession of criminal tools. Appellant was sentenced to five years for attempted burglary and twelve months for possessing criminal tools, to be served concurrently. In addition, the court determined appellant had violated the terms of his post-release control on a prior conviction, and sentenced appellant to an additional 873 days.
 {¶ 2} Facts adduced at trial indicated that, at 10:00 a.m., on the morning of September 11, 2003, the complaining witness, Frank Erwin, heard a knock on his front door at 104 Rodgers Avenue in Franklinton. While he was en route to answer it, he heard a knock at his rear door. Looking out the window, Erwin saw an African-American man on his back porch looking out toward the alley rather than toward the back door. Erwin called 911 and, while on the phone with the operator, heard the back screen door being cut, glass being cut, and the handle being jiggled. To the operator, Erwin described the perpetrator as a black man wearing a multi-colored flannel jacket who was "messing with the doorknob trying to push on my window." (Tr. at 29.)
 {¶ 3} Officer Russell Weiner was one of several officers dispatched to the scene. Officer Weiner testified he was one-half mile away when he got the call and that, as he drove up to the house, he saw appellant running away. Officer Weiner and several other officers, including Officer Michael Burgett, pursued appellant on foot and were able to apprehend him. Officer Burgett testified he searched appellant's pockets and found on his person a flashlight, a screwdriver, and a putty knife. Based upon these facts, the jury convicted appellant on one count each of attempted burglary and possession of criminal tools.
 {¶ 4} Appellant now raises the following assignments of error:
I. The convictions for attempted burglary and possessing criminal tools are against the manifest weight of the evidence.
II. The trial court erred in overruling defendant's rule 29 motion as there was not sufficient evidence to convict the defendant.
III. The trial court erred in allowing the testimony of michael [burgett] to be read into the record as he was not unavailable for purposes of the hearsay exception.
IV. The trial court erred in imposing eight hundred seventy three days for a post release control violation.
V. The trial court erred in imposing the maximum sentences on both counts in the indictment.
 {¶ 5} Appellant's first and second assignments of error are related and will be addressed together. Both argue that deficiencies in the state's evidence produced a conviction that was against the manifest weight of the evidence and unsupported by sufficient evidence.
 {¶ 6} The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307,319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172,175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80.
 {¶ 7} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
 {¶ 8} Appellant's primary assertions are: (1) that the identification of appellant is suspect because Erwin admitted to problems with mental and visual acuity, told police one thing then testified to something else, only saw appellant's back, and, when talking to police, referred to appellant using a racial epithet; and (2) that there was insufficient connection established between the common household items found on appellant's person and the attempted burglary he was said to have committed.
 {¶ 9} The state attributes discrepancies between Erwin's written statement and his testimony to Erwin's admitted difficulties with reading and writing. The state additionally asserts that circumstantial evidence connected the tools found on appellant with the attempted burglary, and that this was sufficient for the state to meet its burden of proof.
A defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."State v. Nivens (May 28, 1996), Franklin App. No. 95AP-1236. A jury, as finder of fact, may believe all, part, or none of a witness's testimony. State v. Antill (1964), 176 Ohio St. 61,67 * * *.
State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21.
 {¶ 10} Evidence adduced at trial established that Erwin is 48 years old, has an eleventh grade education, and has been disabled for seven years due to an accident in which a van fell on him. On direct examination, the prosecution sought Erwin's explanation for discrepancies in his separate accounts of the events occurring that day, and his explanation for his use of a racial epithet. The following colloquy occurred:
Q. Now, when you spoke with the police on September 11th, can you tell us how your statement was given? Did you give an oral statement? Did you give a recorded statement? Written statement?
A. They had me fill out a piece of paper.
Q. And what instructions, if you recall, did you receive as to what you should put on that paper?
A. They told me to write down exactly what happened. But my reading and writing ain't that good, my spelling and stuff so I just wrote down a little bit and so forth. I wish I could spell better. I would have wrote a lot more down about exactly what happened. I just wrote down a few things.
Q. Okay. And that's because your reading and writing —
A. Yes, ma'am. Yes, ma'am. My education isn't that great up until I had that bump on me.
Q. The incident in the van that caused you to be on disability affect your ability to read and write?
A. Well, it caused the mental problems, too, physically and mentally.
Q. Did you also, do you recall, speak to another investigator about this and refer to the defendant as a nigger?
A. Yes, ma'am, I did.
Q. Would you please explain yourself?
A. Okay. When I said nigger, you know, you can take a white person, a Mexican or a black person, to me a nigger is a no good thief.
Q. And are you saying that this defendant is the one who committed this crime because he is black?
A. No.
Q. And during your testimony you took out a pair of glasses to look at these photographs.
A. Yes, ma'am.
Q. Do you recall whether you were wearing your glasses or if you needed glasses on September 11, 2003?
A. No. See, I just use my glasses when it's close-up, you know, like something small. I can't see it. I can see. I can see that picture right there. It's just something small I can't see, I have trouble seeing. My vision ain't the best. I think it might have had something to do with the van falling on me.
(Tr. at 31-33.)
 {¶ 11} From this and other testimony, the jury was entitled to decide whether Erwin was a credible witness, and whether he accurately identified appellant as the person he saw attempting to break into his house. Pursuant to Evid.R. 403, the state could have moved to suppress evidence of Erwin's possible racism, seeState v. Hollis (Mar. 21, 1986), Lake App. No. 10-194, but the state chose instead to permit Erwin to testify about what he said and explain why he said it. Appellant had the opportunity to cross-examine Erwin about his use of a racial epithet, and the jury could weigh for itself whether Erwin's use of such a derogatory term signified an inability on his part to properly identify appellant.
 {¶ 12} The other aspects of Erwin's differing accounts of events, particularly his identification of the color of shirt appellant was wearing, the knife appellant was using, and the type and location of the cuts he alleged appellant made to his screen and/or window, were all properly before the jury, as in each case Erwin explained the discrepancies and appellant had the opportunity to cross-examine.
 {¶ 13} Appellant also claims that the state failed to establish a sufficient connection between the charges against him and the items police found on appellant's person at the time of his arrest. R.C. 2923.24 provides:
(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
(B) Each of the following constitutes prima-facie evidence of criminal purpose:
* * *
(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.
 {¶ 14} This court recently determined that, where evidence regarding the surrounding circumstances would permit a jury to find beyond a reasonable doubt that the defendant intended to use everyday items for a criminal purpose, a trial court does not err in permitting the question to go to the jury. State v. Lowry,
Franklin App. No. 03AP-415, 2004-Ohio-759. As we stated inLowry, at ¶ 20:
Contrary to appellant's claim, this is not a case where "no other evidence connects appellant to the crimes or the use of tools to commit them." * * * The testimony at trial established that appellant was a passenger in a car closely matching the description of a car suspected in other recent automobile break-ins. A screwdriver, a flashlight and a pair of gloves were found under the seat directly in front of appellant. Based on this evidence * * * a reasonable juror could believe beyond a reasonable doubt that appellant either had or had under his control an instrument or device with purpose to use it criminally * * *.
 {¶ 15} In the case at bar, appellant argues the screwdriver, putty knife, and flashlight found in his pocket were common items, and the state failed to present sufficient evidence demonstrating that appellant carried these items for a criminal purpose. However, viewing the totality of the evidence presented at trial, we find there was sufficient evidence linking the tools to the attempted burglary, and that the court did not err in allowing the jury to weigh the evidence.
 {¶ 16} The facts before the jury indicated that police responded to a 911 call that a black man in a plaid shirt was attempting to obtain access to Erwin's home. Responding from just one-half mile away, an officer spotted appellant, who matched Erwin's description, walking away from Erwin's home. Upon spotting the officer, appellant broke into a run. On foot, officers chased him through the neighborhood and, when they caught him, found in his pockets a putty knife, a flashlight, and a screwdriver. Considering all of these circumstances together, we find that a reasonable juror could conclude beyond a reasonable doubt that appellant was in possession of criminal tools.
 {¶ 17} Based upon these considerations, we cannot conclude that the finder of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.Thompkins, at 387. Instead, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the state proved the essential elements of both the attempted burglary and the possession of criminal tools charges beyond a reasonable doubt. Thus, we overrule appellant's first and second assignments of error.
 {¶ 18} By his third assignment of error, appellant argues that the state failed to properly establish that witness Officer Burgett was unavailable due to illness. Officer Burgett was the officer who found the criminal tools on appellant's person, and, appellant argues, absent his testimony there was insufficient evidence supporting appellant's convictions. The state counters that the defense failed to preserve this issue for appeal by specifically objecting once the prosecution explained that the witness was not available, and that defense counsel also failed to object to the unsworn nature of statements by the prosecutor alleging Officer Burgett's unavailability.
 {¶ 19} Evid.R. 804(B)(2) allows the use of former testimony where it is established that a witness is unavailable. To establish unavailability, Evid.R. 804(A)(5) requires a showing that the witness is absent from the hearing and the proponent of the witness's statement has been unable to procure the witness's attendance by process or other reasonable means. The burden is on the proponent of the evidence to establish unavailability, and, in the criminal setting, a witness is only considered unavailable if the prosecution has made reasonable, good-faith efforts to secure his or her presence. State v. Keairns (1984),9 Ohio St.3d 228, 232, citing Ohio v. Roberts (1980), 448 U.S. 56. Pursuant to Keairns, "[a] showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." Id. at 232.
 {¶ 20} Regarding the issue of Officer Burgett's availability, the following discussion took place at trial:
THE COURT: I assume you couldn't find him.
[PROSECUTOR]: Your Honor, if I could, I guess it was about a half hour ago, this officer was here yesterday afternoon waiting to testify under subpoena. He was advised along with the officer who is here this morning to be here at 8:45 just so I wouldn't panic of him being missing. My understanding, he starts work at 9:00 o'clock. Sergeant Marcum didn't go there first, was on his way here. He doesn't have a radio. I can't reach him by radio. The sergeant is in a meeting. He is unavailable and he's not here, which is highly unusual for this officer. I'm concerned that something has happened to him, because if it hasn't, he is going to hear about it.
THE COURT: What's he going to add to this whole thing?
[PROSECUTOR]: He did the search of the defendant. So in light of that, I have potentially two requests, Your Honor. First, if I could recall Officer Waugh just to ask him one additional question, as he is still here, regarding who took the defendant from him because he is the one that did the apprehension to do any further process.
The other request is, as this particular officer did testify in the previous trial with the same motivations by the defendant for cross to allow his testimony to be read from the prior trial pursuant to 804 as I would propose he is unavailable pursuant to 804.05.
THE COURT: Do you have any objections to the testimony being read?
[DEFENSE COUNSEL]: Actually, I do. I do inasmuch as the rule that's quoted does talk in terms of the defendant's right to confrontation of the accusers. And I believe to allow that would violate the other things.
* * *
[PROSECUTOR]: Your Honor, Officer Mike Burgett who was waiting to testify yesterday afternoon was advised to be here at 8:45 this morning along with Officer Todd Waugh who did testify. He was not here and there was no message on my voicemail nor at my front desk at my office nor with the court liaison.
After much search with the other officer that was here and his assistants, we determined that he marked off sick this morning. I called his home and asked him to page back. Spoke to him. And he sounded horrible on the phone and has indicated he's apparently got some sort of flu and cannot leave the bathroom, which is where he is now.
* * *
THE COURT: Is there any reason to disbelieve the accuracy of the factual matters of his being sick?
[DEFENSE COUNSEL]: Judge, inasmuch as I've just heard about this, I mean, yeah, I don't have any evidence to refute that. I would just like the record to reflect my objection.
THE COURT: I understand that. I just wanted to make sure you don't have any information that that information is inaccurate.
[DEFENSE COUNSEL]: I don't inasmuch as I just found out about it a very short while ago. So but I appreciate the Court letting me register my objection to that.
* * *
THE COURT: I don't see any particular harm to having the prior transcript read. It's fairly short and [Defense Counsel] did have an opportunity to cross-examine the witness at that point in time and did so. So I will let that matter be read to the jury with the affirmative finding that the witness is, in fact, unavailable.
(Tr. at 94-95, 98-100.)
 {¶ 21} The First District Court of Appeals recently addressed a similar argument regarding witness unavailability. In State v.Nix, Hamilton App. No. C-030696, 2004-Ohio-5502, the appellant argued the trial court had erred in ruling a witness to have been unavailable where the witness had been told of the trial date, but had failed to appear and allegedly was not able to be contacted. The trial court did not swear the prosecutor before allowing him to explain efforts to locate the witness and, at the conclusion of these representations, the court asked whether defense counsel accepted that the witness was unavailable or whether he wanted a detective who had attempted to contact the witness to give testimony under oath. Defense counsel requested that the detective testify, the detective was sworn, and defense counsel questioned him about efforts to locate the witness. After defense counsel declined an offer to present his own evidence on the issue of the witness's availability, the trial court ruled the witness unavailable and admitted a redacted version of her former testimony. The trial court then asked defense counsel if he wanted anything else redacted. In response, defense counsel indicated that he had discussed the matter with his client and that it was okay to proceed. Addressing these facts, the appellate court stated, at ¶ 30-32:
* * * Significantly, at no time did [defense counsel] lodge an objection to the introduction of [the witness's] former testimony based upon the state's failure to competently establish that she was unavailable.
Viewing the record on this issue, we are convinced that the prosecution did make a reasonable good-faith effort — in fact, several efforts, including a personal attempt by the prosecutor — to secure [the witness's] appearance. But it is also apparent to us that the prosecution, apparently unfamiliar with the foundational requirements of Keairns, relied almost exclusively on its own unsworn representations to the court to describe those efforts. The only sworn testimony was by [the detective], whose last-ditch effort at securing [the witness's] appearance, without a subpoena, would not alone have been sufficient to sustain the state's burden of establishing unavailability.
Also clear, however, is that [defense counsel] at no time voiced disagreement with the court's decision that [the witness] was unavailable, challenged the prosecution's representations, or lodged anything remotely approaching an objection. * * *
 {¶ 22} Thus, the court in Nix, at ¶ 33, interpreted statements by defense counsel as signaling counsel's concession that the witness was not available, and that "the foundational requirements of Keairns are not to be strictly applied unless made an issue by events at trial."
 {¶ 23} In this case, although we are troubled by the trial court's failure to swear the prosecutor prior to accepting her explanation regarding Officer Burgett's absence, considering the facts and the entire course of the trial, we cannot say that any failure to abide by the requirements of Evid.R. 804 and Keairns
resulted in prejudice to appellant's case.
 {¶ 24} As the trial court observed, Officer Burgett's testimony was short and had been subject to cross-examination during the prior proceeding in which it had been made. In addition, evidence established Officer Burgett was not the only officer at the scene. Officer Weiner testified he was one of the officers who pursued appellant and was present when appellant was apprehended. Officer Weiner identified the tools in court, and testified that he had received the tools from "[e]ither Officer Burgett or Officer Waugh," and that he filled out the slip to submit the items to the property room. (Tr. at 68.) None of the questions asked by appellant's counsel on cross-examination suggested that appellant disputed that these tools were his or that they had been in his possession at the time of his arrest. Instead, the defense's position was that the tools could not be interpreted to be criminal tools because there was insufficient evidence linking them to a crime. Thus, Officer Burgett's testimony was not necessarily critical to the state's case, nor was appellant's inability to cross-examine him before the jury prejudicial to appellant's defense. Following the First District's reasoning that Keairns need only be strictly applied where events at trial demand it, we conclude the trial court did not err in ruling Officer Burgett to be unavailable, pursuant to Evid.R. 804, and so overrule appellant's third assignment of error.
 {¶ 25} Appellant's fourth and fifth assignments of error deal with his sentence, and will be addressed together. Appellant's fourth assignment of error charges the trial court should not have imposed the balance of his post-release control in this case, because, when appellant was convicted in a prior case, he was not informed that post-release control was a part of his sentence. His fifth assignment of error claims the court erred in imposing the maximum sentence because the court's statements regarding sentencing were an afterthought and, therefore, did not comply with the requirements of R.C. 2929.14(C).[1]
 {¶ 26} In sentencing appellant, the trial court stated:
THE COURT: Mr. Williams, I am going to impose the maximum sentence on the attempted burglary, being five years in the state penitentiary.
I'm also going to impose sentence twelve months for possession of criminal tools. They are going to run concurrently.
I'm going to impose the balance of the eight hundred seventy-three days of your post-release control and I'm going to run those sentences consecutive provided by statute.
I do have to advise you again with respect to post-release control. After you are released from the institution, you will have a period of post-release control up to a maximum of five years. If you violate any conditions of post-release control, your sentence could be extended and that will be done administratively as part of the sentence. The extension would be for a period of nine months for each violation and/or you can serve the entire amount, the balance of your post-release control.
If you commit any felony while you are on post-release control, any new felony that is committed by you would run consecutive with any violation you get as a result of postrelease control.
You have a right to appeal this conviction. You have the right to have a timely notice of appeal filed on your behalf.
You also have the right to have an attorney appointed for you for purposes of perfecting your appeal if you're unable to provide counsel. You also have the right to have the necessary documentation provided for you at no expense.
Your attorney is also going to advise you with respect to your rights to appeal. And I will, in fact, appoint a lawyer for you to handle that appeal.
* * *
THE COURT: Just one second. For purposes of the record, maximum sentence was given in this case because the defendant is the worst form offender, poses the greatest likelihood of committing future crime.
The defendant is a career criminal. He has numerous breaking and enterings, receiving stolen property in his record. For the past ten to twelve years he has been in and out of the institution on very related offenses. And obviously in this case he was on post-release control for committing the exact same offense.
It appears the defendant is a drug-addicted person and he poses a great threat to the community at any point in time that he is out so that's why the shortest prison term would demean the seriousness of his conduct and not adequately protect the public from future crime.
(Tr. at 182-185.)
 {¶ 27} Appellant correctly states that a trial court must notify a defendant that post-release control is a mandatory part of his sentence and that violation of post-release control is grounds for sanction. See State v. Gleason, Franklin App. No. 03AP-135, 2003-Ohio-6110, at ¶ 31-32; Woods v. Telb (2000),89 Ohio St.3d 504, paragraph two of the syllabus. Here, appellant argues that the failure to notify occurred during sentencing on his previous conviction. Appellant's only support for this contention is his counsel's assertion at trial that the prior sentencing entry does not explicitly state that the court notified appellant of the possible sanctions for a post-release control violation. There are two errors in this argument. First, the record of proceedings of a prior conviction is not part of the record before us in this appeal and, therefore, we may not consider it. Second, case law on this topic indicates that, even if a sentencing entry shows that a court notified a defendant, there still must be evidence in the sentencing hearing transcript that, in compliance with R.C. 2929.19(B), the court orally notified the defendant regarding the consequences of violating post-release control. State v. Martin, Trumbull App. No. 2002-T-0111, 2004-Ohio-3190; State v. Wilbon, Cuyahoga App. No. 82934, 2004-Ohio-1784; State v. Brown, Hamilton App. No. C-020162, 2002-Ohio-5983. Therefore, the presence or absence of post-release control notification in the prior sentencing entry, even if it were a part of the current record on appeal, would not be dispositive on the question whether the court in that case actually informed appellant about post-release control.
 {¶ 28} Regarding appellant's claim that the trial court's statements regarding the seriousness of his offenses in relation to his sentence were simply an "afterthought," this court has rejected the view that statements articulating a justification for the sentence must occur prior to pronouncement of the sentence itself. Raver, at ¶ 36. Here, after announcing the sentence, the trial court articulated clearly its reasoning and basis for imposing the maximum sentence.
 {¶ 29} Thus, we overrule appellant's fourth and fifth assignments of error.
 {¶ 30} Based upon these considerations, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] That statute provides, in part:
"* * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *."