OPINION
{¶ 1} Defendant-appellant James Mobley appeals from his convictions and sentence for Breaking and Entering, Grand Theft, Possession of Criminal Tools, and Having a Weapon under Disability. Mobley contends that the trial court erred in overruling his Crim. R. 29(A) motion because the convictions were not supported by sufficient *Page 2 
sufficient evidence. Mobley also contends that his convictions are against the manifest weight of the evidence because the State's case consisted of inferences built upon inferences, which is an impermissible basis for a conviction.
 {¶ 2} We conclude that the convictions are supported by sufficient evidence and that the jury's verdict is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In late March 2007, Dayton Police Officers were dispatched to Uloho's Car and Audio on a burglar alarm, at about 2:17 a.m. Officers Adam Sharp and Greg Thornton were the first on the scene, and arrived about four or five minutes after being dispatched. Neither officer saw anyone running down the street, or running to or from the building, which was located on North Main Street.
 {¶ 4} When Sharp and Thornton arrived, they parked on a side street and went to the back of the business. As the officers checked a security gate at the back of the building, they heard loud, crashing noises coming from inside the building. Sharp described the noise as sounding like someone was climbing up a shelf and knocking items over. Upon hearing the noise, the officers called for additional crews to surround the perimeter of the building.
 {¶ 5} Dayton Police Officers Eric Brown and Nathan Speelman were among the officers who responded. Speelman was stationed on the front perimeter, which was on the west side of the building, and Brown was on the north side. Neither Brown nor Speelman saw anyone running from the building. At some point, the police called the fire department *Page 3 
fire department to bring a ladder so the police could get on the top of the building to see if anyone was there or if there was an exit from the building to the roof. After the fire department arrived, Brown and Speelman went up on the roof, using a ladder that had been placed at the back, or east side of the building. The roof was flat and was gravel with tar. The roof was not wet.
 {¶ 6} When the officers went up on the roof, they saw a large circular ventilation cover that was in two pieces. One piece was still attached to the roof and the other, which was like a vent hood or cover, was off and to the side. Brown looked down the vent and was able to see part of the Uloho garage, which contained equipment, tires and boxes. The vent was about eight to ten feet long and had a grate partially across the opening. Because the officers could not hear or see anything from their limited view down the vent hole, they continued to go around the roof to see if there were other entrances or exits, or possibly any people on the roof.
 {¶ 7} The building in which Uloho was located shared a common wall with a church, and the roofs were entirely connected. While on the roof, Brown and Speelman received a message that another officer had seen an individual crawling on the roof. Brown and Speelman then observed a man (later identified as James Mobley) crawling on another section of the roof. Mobley was dressed all in dark clothing and was laying prone, on his stomach. Mobley was very dirty. His clothes were wet and dirty and had brownish-red dirt on them, along with bits of fuzz, like pieces of paper. It was not raining at the time, and the officers' clothing was not wet. There had been rain earlier that day.
 {¶ 8} The officers put cuffs on Mobley to detain him, and when Mobley was lifted to *Page 4 
to his feet, the officers saw a large silver Sony digital camera either underneath or right next to where Mobley had been lying. The camera had the same type of rust-colored debris as was on Mobley's clothes. Speelman and Brown stayed on the roof when Mobley was taken down the ladder and was placed in a cruiser. When Mobley was patted down, the officers found a flashlight and a large amount of change in Mobley's pockets.
 {¶ 9} Brown and Speelman continued to focus on the vent. Brown used a ladder to go down the vent to look for other suspects or possibly an injured person. After doing a quick search, Brown was able to find a way to let other officers in the store.
 {¶ 10} During the search, the officers observed water damage and a hole on a ceiling in the northeast corner of the store. The hole was fairly large, was damp, and contained a lot of dirt and debris. Inside the hole, the dirt was rusty and was the same color as the dirt on Mobley's clothing. The police observed that it was possible to get out onto the roof through the hole in the ceiling. They also found a substantial amount of loose change on the floor in the cash register area, and a large piece of cardboard that had a shoe-print. In addition, lug rings were scattered on the floor. No other suspects were found in the store, on its roof, or on the roof of the adjoining building.
 {¶ 11} Shortly thereafter, Ronald Marsh, the manager of the store, arrived. Marsh identified the following missing items: a digital camera, a cell phone, a .380 loaded gun used for store protection, and change. Marsh told the police that Mobley was not an employee and had no legitimate reason for being in the store. After patting Mobley down, the police did not find a gun. Consequently, Thornton went back on the roof and found a silver cell phone and gun located where Mobley had been lying. The butt of the firearm *Page 5 
firearm was sticking out from underneath the metal flashing on the roof, within the immediate lunge or reach area where Mobley was found. The same rust-colored dirt and debris were found on both the cell phone and gun. The gun also had a laser sight or scope, as Marsh had described.
 {¶ 12} Thornton recorded the serial number of the gun and placed the number on the crime report. Thornton then gave the gun and cell phone back to Marsh. Later the same day, Detective Goodsey of the Dayton Police Department retrieved the gun from Uloho's, submitted the evidence to the property room, and asked the crime lab to test the gun for operability. When the crime lab tested the gun, it was found to be operable.
 {¶ 13} The crime lab also attempted to match Mobley's shoes to the print on the cardboard. The examiner was able to match the tread design, size, wear, and manufacturing characteristics of the shoe to the cardboard impression, and indicated that it was very unlikely that a different shoe had made the impression. In particular, the stippling on a shoe is particular to an individual mold, meaning that all shoes from that mold will have the same small dots, which are called stipples. However, because the examiner could only match one or two individual wear marks on the shoe to the cardboard, she could not say that Mobley's shoe, absolutely, made the impression to the exclusion of all other shoes in the world.
 {¶ 14} Marsh, the manager of the Uloho store, testified that all the missing or misplaced items were in their proper places in the store and were not covered with any dirt or debris when he closed the store the night before the burglary. Further, Marsh indicated that the vent looked different when he closed the store, and that the ceiling only had some water damage. There was no hole in the ceiling when he left the store, nor was there any *Page 6 
nor was there any debris or dirt.
 {¶ 15} After presenting the above evidence, the State rested. Mobley moved to dismiss the charges under Crim. R. 29(A), but the trial court overruled the motion. Mobley then rested without presenting any evidence. The jury convicted Mobley on all four counts, as charged, and he was sentenced accordingly. Mobley appeals from his convictions and sentence.
 II {¶ 16} Mobley's First Assignment of Error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S CRIMINAL RULE 29 MOTION BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CHARGES."
 {¶ 18} Under this assignment of error, Mobley contends that the trial court should have granted his Crim. R. 29 motion for acquittal because the State failed to prove the elements of each of the offenses.
 {¶ 19} Crim. R. 29(A) provides that the court may order acquittal of one or more offenses after the evidence is closed, "if the evidence is insufficient to sustain a conviction of such offense or offenses." A motion for a judgment of acquittal under the Rule: "tests the sufficiency of the evidence presented at trial. State v. Williams
(1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724. When considering a sufficiency-of-the-evidence argument, an appellate court must `examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, *Page 7 
paragraph (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. More precisely, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Cooper,151 Ohio App.3d 790, 796, 2003-Ohio-1032, 786 N.E.2d 88, at ¶ 20.
 {¶ 20} Count One charged Mobley with violating R.C. 2913.11(A), which provides that:
 {¶ 21} "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."
 {¶ 22} R.C. 2913.01(K) defines a theft offense to mean any of a number of statutory violations, including a violation of R.C. 2913.02, which states that:
 {¶ 23} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 24} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 25} "* * *
 {¶ 26} "(B)(1) Whoever violates this section is guilty of theft."
 {¶ 27} R.C. 2913.02(B)(4) further provides that "If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft. Except as otherwise provided in this division, grand theft when the property stolen is a firearm or dangerous ordnance is a felony of the third degree * * * ."
 {¶ 28} Mobley contends that the evidence is insufficient because there is no proof *Page 8 
that he was ever inside the store. We disagree. While there is no direct evidence, the circumstantial evidence against Mobley is overwhelming.
 {¶ 29} Notably, circumstantial evidence and direct evidence have the same probative value. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph one of the syllabus. Furthermore, "direct evidence of a fact is not required, and circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence."State v. Jackson (1991), 57 Ohio St.3d 29, 38, 565 N.E.2d 549.
 {¶ 30} The circumstantial evidence in this case includes the fact that Mobley was discovered, after 2:00 a.m., crawling around on a roof that connected to the roof of the building that was burglarized. When the police arrived, they heard noises inside the building and surrounded the perimeter. There is no evidence that anyone escaped through the police line, and no one was inside the building when the police went down the vent. Two possible entrances or exits existed — the vent in the roof and the hole that contained wet, rust-colored dirt and debris. When Mobley was apprehended, his clothing was wet and was covered with dirt and debris matching the dirt and debris in the hole. One of the stolen items was found under or at Mobley's side, and it was also covered with the same dirt that was on Mobley's clothes. Two other stolen items were subsequently recovered at or within reach of the area where Mobley was discovered, and these items also contained the same dirt and debris. Finally, a surveillance tape was played that *Page 9 
was played that showed a person inside the premises at the time of the crime.[1]
 {¶ 31} No possible reason was offered for Mobley's presence on the rooftop of two closed businesses at 2:00 a.m. — and coincidentally at the time of a burglary. The only reasonable inference that can be drawn from the evidence is that Mobley entered the premises, took the digital camera, cell phone, and gun, and crawled out through the hole in the roof. Accordingly, Count One is supported by sufficient evidence.
 {¶ 32} Count Two of the indictment charges Mobley under R.C. 2913.02(A)(1) with theft of a firearm as defined in R.C. 2923.11. The elements of this theft offense are outlined above, with the addition that the stolen item is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11 (B)(1).
 {¶ 33} At trial, the State presented testimony from the store manager and police personnel, identifying the gun that was in police possession. The State tested the gun and it was found to be operable. Mobley contends, however, that there is no credible evidence in the record that this was the same weapon as the one that was recovered from the roof. The gun found on the roof had a laser sight or scope. However, no scope was on the gun when the police retrieved it from Uloho later the same day.
 {¶ 34} We conclude that this argument is without merit. The State produced evidence that the serial number on the gun in its possession matched the serial number of *Page 10 
of the gun that was found on the roof. The identification of the gun by the store manager and police personnel was also undisputed. Furthermore, the removal of the scope is of no consequence, since there was no evidence that the scope had anything to do with the operability of the gun or the circumstances of the crime.
 {¶ 35} Mobley also contends that the conviction is legally insufficient, because the State failed to prove that he entered the premises with intent to steal a firearm, and because his possession is not established by the fact that a gun was found nearby.
 {¶ 36} As to the first point, the State did not have to prove that Mobley intended to steal a firearm when he entered the premises. R.C. 2913.02(A)(1) only requires Mobley to have knowingly exerted control over the firearm, without the consent of the owner, and that he intended to deprive the owner of the property. The circumstantial evidence is more than sufficient to establish that Mobley exerted control over the gun and intended to deprive the owner of it without the owner's consent. Marsh, the store manager, stated that the gun was always kept in a cubbyhole about five or six feet away from the cash register. The gun was never allowed to leave the store and it was there when Marsh closed the store before the burglary. Marsh also indicated that the gun was missing when he arrived at the store the night of the burglary.
 {¶ 37} As we noted, the gun was found within arms reach of where Mobley was apprehended. This was sufficient to establish that Mobley had possession of the gun. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession."State v. Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. Accord,State v. Cherry, 171 Ohio App.3d 375, 379, 2007-Ohio-2133, at ¶ 11
(finding a defendant in constructive *Page 11 
defendant in constructive possession of a gun where the gun was found on the floor of the side of the car where the defendant had been sitting). Accordingly, there is sufficient evidence to support the conviction on the charge of theft of a firearm.
 {¶ 38} Count Three of the indictment charged Mobley with possession of a flashlight with the purpose of using it criminally in the commission of a felony, in violation of R.C. 2923.24(A). Mobley contends the evidence on this charge is legally insufficient because the officers did not test the flashlight to see if it worked, and no one saw Mobley use the flashlight. However, proof of these matters is not required under R.C. 2923.24(A). This statute provides that a person shall not "possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 39} In State v. Williams, Franklin App. No. 04AP-279,2004-Ohio-6254, the Tenth District Court of Appeals noted that "where evidence regarding the surrounding circumstances would permit a jury to find beyond a reasonable doubt that the defendant intended to use everyday items for a criminal purpose, a trial court does not err in permitting the question to go to the jury." Id. at ¶ 14. The Tenth District, therefore, affirmed the defendant's conviction for possession of criminal tools, where he was apprehended with a flashlight, screwdriver, and putty knife. Id. At ¶ 3.
 {¶ 40} Mobley was apprehended after 2:00 a.m., at the scene of a burglary, with a flashlight in his pocket. Under the circumstances, there is sufficient evidence in the record to support the conviction for possession of criminal tools.
 {¶ 41} The final count in the indictment alleged that Mobley had a weapon while under disability, in violation of R.C. 2923.13(A)(3). This statute prohibits an individual from *Page 12 
from knowingly acquiring, having, carrying, or using firearms where the person has been "convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." Mobley contends that the State failed to prove the essential elements of this charge because the individual in the prior case was a Christopher Mobley, not James Mobley.
 {¶ 42} The case in question was Montgomery County Case No. 2005-CR-3351, which lists the defendant as Christopher Allen Mobley. Mobley told the police when he was arrested that he had two middle names and that he went by the name of James Christopher Allen Mobley. The indictment in the present case reflected this fact, by stating that the defendant, James C. Mobley, was also known as Christopher Allen Mobley.
 {¶ 43} At trial, the State presented the termination entry from the prior case, which reflects the same birthdate and social security number that was verified for Mobley in connection with the current charges. The State's fingerprint expert also compared the fingerprints taken in Case No. 2005-CR-3351 with James Mobley's fingerprints, and testified that the fingerprints were from the same individual. Accordingly, the State submitted sufficient evidence to sustain a conviction on Count Four of the indictment.
 {¶ 44} Mobley's First Assignment of Error is overruled.
 III {¶ 45} Mobley's Second Assignment of Error is as follows:
 {¶ 46} "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT *Page 13 
OF THE EVIDENCE BECAUSE IT [SIC] IS BASED ON AN IMPERMISSIBLE STACKING OF AN INFERENCE UPON AN INFERENCE."
 {¶ 47} Under this assignment of error, Mobley contends that the State relied on a series of impermissible inferences, beginning with the inference that Mobley somehow broke the vent cover on the building. The second alleged inference is that Mobley went down the ventilation duct and dropped fifteen feet onto the floor without injury. Other inferences include that Mobley stepped on a piece of cardboard, leaving a footprint, that he somehow left the building by crawling though a water-damaged hole, that someone would become wet and covered in rust-colored dirt by crawling through a water-damaged hole, and that Mobley must have committed the breaking and entering because he was the only person found on the building's roof.
 {¶ 48} "An inference has been defined as `a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.' State v. Nevius (1947), 147 Ohio St. 263,34 O.O. 210, 71 N.E.2d 258. An inference may be based in part on another inference, so long as that inference is also supported by other independent facts from the direct evidence. State v. Palmer (1997),80 Ohio St.3d 543, 561-562, 687 N.E.2d 685." State v. Guidugli157 Ohio App.3d 383, 388-389, 2004-Ohio-2871, 811 N.E.2d 567, at ¶ 17.
 {¶ 49} The direct evidence in this case, as recited above, supports the conclusion that Mobley was inside the store, stole the camera, cell phone, coins, and gun, and escaped to the roof through the area where the ceiling had been water-damaged. There is no other reasonable explanation for the presence of the stolen items underneath or next to Mobley's prone body, or for the presence of the same rust-colored dirt and debris on these *Page 14 
on these items as was on Mobley's clothing. The State was not required to prove how Mobley got into the store in the first place — although a logical inference from the direct evidence is that Mobley entered the store by using the vent on the roof, and then exited through the area where the water damage had occurred.
 {¶ 50} Mobley also challenges the lack of fingerprint evidence. However, this was explained at trial. Because the gun, camera, and cell phone were muddy and wet, they would not have yielded useful fingerprint evidence. In addition, the counters in the business were covered with carpet and would not have provided useful evidence. The police did dust for fingerprints, but were unable to find many fingerprints. In any event, the lack of fingerprint evidence is insignificant, given the overwhelming evidence against Mobley.
 {¶ 51} The standard for reversing on the manifest weight of the evidence is as follows:
 {¶ 52} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. * * *Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also,State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219,485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in *Page 15 
in which the evidence weighs heavily against the conviction.')."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, 546-47.
 {¶ 53} After reviewing the evidence, we conclude that the jury did not clearly lose its way and create a manifest miscarriage of justice. Accordingly, Mobley's Second Assignment of Error is overruled.
 IV {¶ 54} All of Mobley's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.
Copies mailed to:
 Mathias H. Heck, Jr. Mark J. Keller Andrea G. Ostrowski Hon. Mary L. Wiseman
[1] The tape was not of good quality, so the person could not be identified. *Page 1